**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

KENNETH J. PHELAN,

                              Plaintiff,

     v.                                     No. 11-CV-314
                                                 (DNH/DRH)

QUINN, Correctional Officer, Great Meadow
Correctional Facility; SWAN, Correctional
Officer, Great Meadow Correctional Facility;
McDONALD, Correctional Officer, Great
Meadow Correctional Facility; WARRINGTON,
Correctional Officer, Great Meadow
Correctional Facility; WASHER, Sergeant,
Great Meadow Correctional Facility; MINAL,
Psychologist, Great Meadow Correctional
Facility; TORRES, Counselor, Great Meadow
Correctional Facility; OWENS, Sergeant,
Great Meadow Correctional Facility; GEBO,
Correctional Officer, Great Meadow
Correctional Facility; FULLER, Correctional
Officer, Great Meadow Correctional Facility;
KISER, Correctional Officer, Great Meadow
Correctional Facility; MURPHY, Correctional
Officer, Great Meadow Correctional Facility; and
NURSE TED, Nurse, Great Meadow Correctional
Facility,

                              Defendants.

─────────────────────────────────

**APPEARANCES:**                         **OF COUNSEL:**

KENNETH J. PHELAN
Plaintiff Pro Se
09-A-1183
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

HON. ERIC T. SCHNEIDERMAN        WILLIAM J. McCARTHY, JR.
Attorney General for the State of        Assistant Attorney General
    New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Kenneth J. Phelan ("Phelan"), an inmate in the custody of the New York State Department of Corrections and Community Supervision (DOCCS), brought this action against thirteen DOCCS employees at Great Meadow Correctional Facility alleging violations of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.. Am. Compl. (Dkt. No. 7).  Defendants have moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 29.  Phelan opposes the motion.  Dkt. No. 32.  For the reasons which follow, it is recommended that defendants' motion be granted but that Phelan be granted leave to file a second amended complaint.


### I. Background

The facts are related herein in the light most favorable to Phelan as the non-moving party.  See subsection II(A) infra.

At all times relevant herein, Phelan was incarcerated at Great Meadow and suffered from Attention Deficit Disorder (ADD) and a traumatic brain injury (TBI).  Am. Compl. at ¶ 3. In December 2010, Phelan was housed in "C' bloc at Great Meadow.  Id. at ¶ 5.  Other inmates on that bloc abused Phelan by banging on the walls to keep Phelan awake all night and by encouraging him to kill himself.  Id.  Defendants Quinn, Minal, Torres, and Washer were responsible for assigning inmates to cells.  Id.  Phelan complained on a daily basis

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

about the harassment from other inmates and requested to be transferred to another cell

bloc, but these defendants refused his requests.  Id.  On December 29, 2010, Phelan

attempted suicide by hanging himself in his cell but was found and removed by a

corrections officer.  Id.  Thereafter, he was transferred to another cellblock.  Id. at ¶ 9.

On a date not stated,[2] defendant Owens ordered defendants Fuller, Gebo, Kiser, and

Murphy to enter Phelan's cell and assault him, which they did even though Phelan offered

no resistance and was fully compliant.  Am. Compl. at ¶ 6.  These defendants then

transported Phelan to the infirmary where he was treated by defendant Nurse Ted.  Id.  Ted

administered six stitches to a laceration on Phelan's eye but refused Phelan's request to

order x-rays for Phelan's thumb or ankle or to prescribe pain medication for what Phelan

believed were fractures to those areas.  Id.

On January 18, 2011, defendants McDonald and Warrington called Phelan "retard"

and "carrot top" and threatened Phelan if he report them to their superior.  Am. Compl. at ¶

7a.  On January 21, 2011, the same two defendants conducted a search of Phelan's cell,

leaving his legal papers strewn about the cell.  Id. at ¶ 7b.  This was repeated on March 9,

2011 by McDonald and defendant Swan and again on March 13, 2011 by Gebo and

another corrections officer.  Id. at ¶¶ 7c, 8, 10.  On March 11, 2011, Washer transferred

Phelan back to a cell in the "C" bloc where Phelan had been harassed by other inmates in

that cell bloc and had attempted suicide.  Id. at ¶ 9.  This action followed.

─────────────────────

[2]Phelan appears to have set forth his allegations in chronological order.  The last
date in the previous allegation is December 29, 2010 and that in the following allegation is
January 18, 2011.  Am. Compl. at ¶¶ 5, 7a.  Therefore, it will be inferred for purposes of
this motion that this incident occurred in the period between these dates.

## II. Discussion

Phelan's amended complaint seeks damages and other relief only under the ADA. See Am. Compl. at ¶ 1.  Under the ADA, Phelan contends that defendants discriminated against him because of his disabilities and denied him a reasonable accommodation for those disabilities.  However, liberally construing the amended complaint, the facts alleged by Phelan would also suggest claims under 42 U.S.C. § 1983 for (1) the use of excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment (Am. Compl. at ¶ 6), (2) retaliation for filing complaints and grievances in violation of his First Amendment right to seek the redress of grievances (id. at ¶¶ 7a-c, 8, 10), and (3) failing to protect Phelan from harm posed by other inmates in violation of his Eighth Amendment right to be free from cruel and unusual punishment (id. at ¶¶ 5, 9).

Defendants seek dismissal of the amended complaint on the grounds that (1) liability under the ADA may be asserted here only against New York State and may not be asserted against the individual defendants; (2) the amended complaint fails to allege claims against Quinn, Minal, Torres, or Washer; and (3) the amended complaint fails to allege a claim against Ted.  Defs. Mem. of Law (Dkt. No. 29-1) at 2-6.

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994). However, this "tenet ... is

4

inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir.2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible ....") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 680.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or

> arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.' " (citations omitted)).


## B. Individual Liability

Defendants contend that Phelan's only remedy under the ADA lies against New York State and relief is barred against the individual defendants.  Defs. Mem. of Law at 2.  In opposition, Phelan contends that he has sued the individual defendants in both their individual and official capacities and, since they are sued in their official capacities, he has asserted his ADA claim against the state.  Pl. Mem. of Law (Dkt. No. 32) at 2.  Liability against the individual defendants in their individual capacities under the ADA and for money damages in their official capacities are barred.  See 42 U.S.C. § 12111(5); see also Kentucky v. Graham, 473 U.S. 159, 167–68, 105 S. Ct. 3099, 3106 (1985); Hamzik v. Office for People with Developmental Disabilities, No. 3:11-CV-73, 2012 WL 1701312, at *5 (N.D.N.Y. May 16, 2012) (Hurd, J.).  Thus, Phelan's claim for damages against the defendants under the ADA in both their individual and official capacities should be granted.

However, it is likewise well settled that claims for prospective or injunctive relief may proceed against individual defendants in their official capacities.  See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (holding that ADA "suits for prospective injunctive relief may . . .

6

proceed against individual officers in their official capacity") (citing Ex parte Young, 209 U.S. 123 (1908) and Henrietta D. v. Bloomberg, 331 F.3d 261, 289 (2d Cir. 2003)); Hamzik, 2012 WL 1701312, at *5. Among the forms of relief sought in the amended complaint are "[i]njunctive relief ordering all defendants to stay away from Plaintiff Phelan, and have no contact with him" and "[i]njunctive relief ordering defendant Washer not to house me on 'C' gallery or 'B' gallery." Am. Compl. at ¶ 12. Defendants have not challenged these claims for relief at this stage. Accordingly, defendants' motion as to Phelan's claims for injunctive relief against the defendants in their official capacities should be denied.

### C. Quinn, Minal, Torres, and Washer

Phelan alleges that in December 2010, while being harassed by other inmates in "C" bloc, he made daily requests for transfer to another bloc to Quinn, Minal, Torres, and Washer, all of whom were authorized to approve such a transfer, but that they refused his requests until after Phelan attempted suicide on December 29, 2010. Am. Compl. at ¶ 5. Phelan further alleges that after he was transferred out of "C" bloc, Washer transferred him back to that bloc on March 11, 2011. Id. at 9. Defendants seek dismissal of the claims against these defendants on the ground that Phelan did not possess a constitutional right to be assigned to or away from any particular cell bloc. Defs. Mem. of Law at 2-4.

Phelan's clams for damages against these defendants under the ADA cannot survive and must be dismissed. See subsection II(B) supra. However, as noted, Phelan's complaint contains allegations which, liberally construed, could support other causes of action not explicitly pleaded in his complaint. A pro se action should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives

any indication that a valid claim may be asserted. <u>Parrino v. Sun Gard Availability Services,</u>

<u>L.P.</u>, No. CV 11–3315, 2012 WL 826946, at *4 (E.D.N.Y. Feb. 16, 2012) (citing <u>Gomez v.</u>

<u>USAA Fed. Sav. Bank</u>, 171 F.3d 794, 795 (2d Cir.1999));  <u>Wilson v. Woodbourne</u>

<u>Correctional Facility</u>, No. 9:11–CV–1088 (DNH/ATB), 2012 WL 1377615, at *6 (N.D.N.Y.

Mar. 21, 2012).

  An inmate may state a claim under the Eighth Amendment for a prison official's

failure to protect him or her from harm if the inmate alleges "that 1) he or she was

incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison

officials exhibited deliberate indifference to the inmate's plight." <u>Gillard v. Hamel</u>, No. 9:09-

CV-0431 (TJM/DEP), 2012 WL 967064, at *7 (N.D.N.Y. Feb. 24, 2012); <u>see also</u> <u>Farmer v.</u>

<u>Brennan</u>, 511 U.S. 825, 834 (1994).  Construing Phelan's amended complaint liberally and

drawing all reasonable inferences in favor of Phelan, he has alleged that he was placed at

risk while housed in "C" Bloc in December 2010 where he was harassed and abused by

other inmates and that he asked these four defendants on a daily basis to transfer him to

another cell bloc to avoid the harm.  Phelan also alleges that Washer transferred him back

to "C" Block in March 2011.  The allegations may or may not suffice to state a claim under

the Eighth Amendment for failure to protect where it is unclear what, if any, harm Phelan

suffered directly at the hands of inmates or how defendants were on notice in December

2010 that the conduct of other inmates could foreseeably cause Phelan to attempt suicide.

However, those allegations appear sufficient at this stage at least o require allowing Phelan

an opportunity to amend his complaint to clarify and support such a claim.  Therefore,

defendants' motion as to these four defendants should be denied without prejudice as to

Phelan's Eighth Amendment claim for failure to protect and Phelan should be granted leave

8

to file an amended complaint as to such claim.

### D. Nurse Ted

As the final ground for their motion, defendants contend that Phelan has failed to state a claim against Ted under the Eighth Amendment.  Defs. Mem. of Law at 4-6.  Phelan alleges that on a date between December 29, 2010 and January 18, 2011,[3] he was taken to the infirmary for treatment after he was allegedly assaulted by other defendants.  Am. Compl. at ¶¶ 6,7.  He was treated by Ted, who administered six stitches to his eye "but refused to treat my thumb and ankle or have X-rays done or give me any pain medicine. . . ."  Id. at ¶ 7.  Phelan contends that he has satisfied the pleading requirements for this claim by alleging that Ted was aware that Phelan was in severe pain form the injuries to his thumb and ankle and that Phelan was unable to walk but failed to treat these injuries.  Pl. Mem. of Law at 4.

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66.  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."  Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need.  Chance v.

---

[3]See note 2 supra.

9

Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104, (1976).

Thus, disagreements over medications, diagnostic techniques (e.g.,

10

> the need for x-rays), forms of treatment, or the need for specialists
> or the timing of their intervention, are not adequate grounds for a
> Section 1983 claim. These issues implicate medical judgments
> and, at worst, negligence, amounting to medical malpractice, but
> not the Eighth Amendment.

Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (citing Estelle, 429 U.S. at 107); see also Chance, 143 F.3d at 703 (holding that "[m]ere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Here, Phelan acknowledges in his amended complaint that Ted treated a cut over his eye with stitches. While claiming injury to his thumb and ankle, however, he alleges at worst a disagreement with Ted over how those alleged injuries should have been treated. He contends that X-rays should have been taken to determine if either was broken, but it appears Ted determined that X-rays were unnecessary and there is no allegation that in fact either Phelan's thumb or his ankle were broken. Furthermore, Phelan complains that Ted refused to prescribe him any pain medication for those alleged injuries, but, again, the decision to prescribe medication, or not, is a medical determination and Ted's failure to prescribe such medication constitutes no more than negligence. See Sonds, 151 F. Supp. 2d at 312. Thus, Phelan has alleged that Ted treated one injury but not others. As alleged, and drawing all reasonable inferences in favor of Phelan, Ted was not deliberately indifferent to Phelan' medical needs but simply disagreed with Phelan over the necessity for certain tests and medication. Such disagreements are insufficient to state a claim for deliberate indifference. Accordingly, defendant's motion as to the claim against Ted should

be granted.

### III. Other Claims

As noted, Phelan's amended complaint contains allegations which, liberally construed, could support other causes of action not explicitly pleaded in his complaint. Here, liberally construing the amended complaint, the facts alleged by Phelan would also suggest claims under 42 U.S.C. § 1983 for (1) the use of excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment (Am. Compl. at ¶ 6), (2) retaliation for filing complaints and grievances in violation of his First Amendment right to seek the redress of grievances (id. at ¶¶ 7a-c, 8, 10), and (3) failing to protect Phelan from harm posed by other inmates in violation of his Eighth Amendment right to be free from cruel and unusual punishment (id. at ¶¶ 5, 9.  Therefore, Phelan should be granted leave to file a second amended complaint to assert these additional causes of action.

### IV. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 29) be:

A. **DENIED** as to Phelan's claims for injunctive relief against the defendants in their official capacities; and

B. **GRANTED** in all other respects; and

2. **ORDERED** that Phelan is granted until **July 1, 2012** to file a second amended complaint to assert causes of action for (a)  the use of excessive force in violation

of his Eighth Amendment right to be free from cruel and unusual punishment, (b) retaliation for filing complaints and grievances in violation of his First Amendment right to seek the redress of grievances, and (c) failing to protect Phelan from harm posed by other inmates in violation of his Eighth Amendment right to be free from cruel and unusual punishment

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

DATED:  May 21, 2012

David R. Homer
U.S. Magistrate Judge

13