**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KENNETH J. PHELAN,

                            Plaintiff,

      v.                                          No. 11-CV-314
                                            (DNH/CFH)

QUINN, Correctional Officer, Great Meadow
Correctional Facility; SWAN, Correctional
Officer, Great Meadow Correctional Facility;
McDONALD, Correctional Officer, Great
Meadow Correctional Facility; WARRINGTON,
Correctional Officer, Great Meadow
Correctional Facility; WASHER, Sergeant,
Great Meadow Correctional Facility; MINAL,[1]
Psychologist, Great Meadow Correctional
Facility; TORRES, Counselor, Great Meadow
Correctional Facility; OWENS, Sergeant,
Great Meadow Correctional Facility; GEBO,
Correctional Officer, Great Meadow
Correctional Facility; FULLER, Correctional
Officer, Great Meadow Correctional Facility;
KISER, Correctional Officer, Great Meadow
Correctional Facility; MURPHY, Correctional
Officer, Great Meadow Correctional Facility,

                              Defendants.[2]

---

**APPEARANCES:**                                          **OF COUNSEL:**

KENNETH J. PHELAN
Plaintiff Pro Se
09-A-1183
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

---

      [1]In Phelan's second amended complaint, "Minal" is spelled "Manell." Second Am.
Compl. Second Am. Compl. (Dkt. No. 35) ¶ 3(g).

      [2]By Decision and Order dated June 19, 2012, the Court dismissed Phelan's claim
against defendant Nesmith. Dkt. No. 34.

HON. ERIC T. SCHNEIDERMAN                 ADRIENNE J. KERWIN, ESQ.
Attorney General for the                         Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341


**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[3]

Plaintiff pro se Kenneth J. Phelan ("Phelan"), an inmate in the custody of the New York

Department of Corrections and Community Supervision ("DOCCS"), brings this action

pursuant to 42 U.S.C. § 1983 alleging that defendants, twelve named DOCCS employees at

Great Meadow Correctional Facility, violated his constitutional rights under the First and

Eighth Amendments.  Second Am. Compl.  (Dkt. No. 35).  Presently pending is defendants'

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 36.  Phelan opposes the

motion.  Dkt. No. 41.  For the following reasons, it is recommended that defendants' motion

be granted in part and denied in part.


**I.  Background**

The facts are related herein in the light most favorable to Phelan as the non-moving

party.  See subsection II(A) infra.


**A.  Procedural History**

Phelan commenced this action on March 21, 2011 against fourteen defendants while he

---

[3]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

was incarcerated at Great Meadow.  Compl. (Dkt. No. 1) ¶ 2a.  By an order dated June 8, 2011, the Court granted Phelan's request to proceed in forma pauperis.  Dkt. No. 5.  On August 15, 2011, Phelan filed an amended complaint alleging the same claims against the same defendants except for Gleason.  Dkt. No. 7.  On October 19, 2011, the Court granted the amended complaint, excluding Gleason as a defendant.  Dkt. No. 11.  On February 21, 2012, a motion was filed pursuant to Fed. R. Civ. P. 12(b)(6) on behalf of defendants (1) Quinn, Manell, Torres, Washer, and Nesmith to dismiss the amended complaint in its entirety (2) Swan, McDonald, Warrington, Owens, Gebo, Fuller, Kiser, and Murphy to partially dismiss the amended complaint.  Dkt. No. 29.

On June 19, 2012, the Court granted in part and denied in the part the motion to dismiss dated February 21, 2012.[4]  Dkt. No. 34.  Phelan was granted leave to re-plead (1) an Eighth Amendment cruel and unusual punishment claim for the use of excessive force, (2) First Amendment retaliation claims for filing complaints and grievances, and (3) Eighth Amendment failure to protect claims.  Id.  While incarcerated at Five Points Correctional Facility, Phelan filed a second amended complaint dated June 25, 2012, adding Hayes as a defendant.  Second Am. Compl. (Dkt. No. 35).  On July 5, 2012, defendants Quinn, Manell, Torres, Washer, McDonald, Warrington, Swan, and Gebo filed a motion to dismiss addressing only the failure to protect and retaliation claims.[5]  Dkt. No. 36-1 at 2. Additionally, on July 5, 2012, defendants Fuller, Kiser, and Murphy filed an answer to the second amended complaint, but did not join in the motion to dismiss.  Dkt. No. 37.

_____

[4]See supra n. 1.

[5]Defendants note that defendant Hayes has not appeared in this action because he has not been served with a summons and complaint. Dkt. No. 36-1 at 4 n. 2.  Despite the service issue, this Court will consider Phelan's claims against Hayes as alleged.

## B.  Failure to Protect

Phelan, with a mental health level designation of "1 S",[6] suffered from Attention Deficit Disorder ("ADD") and a traumatic brain injury ("TBI").  Compl. (Dkt. No. 1) ¶ 3.  He alleges that other inmates in the "C" gallery threatened to kill him and slash his face open, encouraged him to commit suicide, and banged on his cell walls so that he could not sleep. Second Am. Compl. (Dkt. No. 35) at ¶ 5; Pl.'s Mem. of Law in Opp. (Dkt. No. 41) at 1. Phelan repeatedly complained to Quinn, Manell, Torres, and Washer of these threats over the course of four weeks.  Second Am. Compl. ¶ 5; Pl.'s Mem. of Law in Opp. at 1-2. Despite these pleas for help, Phelan's requests to be removed from "C" gallery were denied.  Second Am. Compl. ¶ 5.

On December 29, 2010, Phelan attempted suicide by hanging himself in his cell but was found and removed by a corrections officer.  Second Am. Compl. ¶ 5.  Phelan alleges that as a result of his denied requests to be removed, he "almost died and suffered serious injuries, both physical and emotional."  Pl.'s Mem. of Law in Opp. at 2-3.  After his suicide attempt, Phelan was moved to "D" gallery.  See Second Am. Compl. ¶¶ 7, 8.  On March 11, 2011, Washer returned Phelan to "C" gallery, with knowledge that Phelan had attempted suicide in that gallery.  Id. ¶ 9.

## C.  Retaliation

On January 10, 2011, Phelan filed a grievance against McDonald and Warrington for threatening to beat him.  Pl.'s Mem. of Law in Opp. at 3.  On January 21, 2011, McDonald

---

[6]Phelan failed to define what this mental health designation was or explain its importance.

4

and Warrington ransacked Phelan's cell and discarded copies of Phelan's grievances and "some of [Phelan's] lawsuits." Id.; Second Am. Compl. ¶ 7.  During this incident, toothpaste was smeared on Phelan's legal papers, a pair of socks was taken, Phelan's toothbrush was thrown in the toilet, and some pictures were discarded.  Pl.'s Mem. of Law in Opp. at 4.

Phelan filed grievances on February 9, 2011 against McDonald for ransacking Phelan's cell, and on February 20, 2011 against Swan for threatening to beat Phelan if he continued to file grievances.  Pl.'s Mem. of Law in Opp. at 5.  On March 9, 2011, McDonald and Swan ransacked Phelan's cell and discarded legal research papers and copies of Phelan's grievances.  Second Am. Compl. ¶ 8; Pl.'s Mem. of Law in Opp. at 5-6.

On March 2, 2011, Phelan filed a grievance against Hayes and Gebo for threatening physical harm.  Pl.'s Mem. of Law in Opp at 6.  Hayes and Gebo ransacked Phelan's cell on March 9, 11, and 13 of 2011.  Second Am. Compl. ¶ 10; Pl.'s Mem. of Law in Opp at 6-7.  During these searches, Hayes and Gebo smeared butter on Phelan's sheets and towel, "scrambled" legal documents, destroyed pictures, and placed Phelan's toothbrush in the toilet.  Id.

## II.  Discussion

Phelan's alleges that his Eighth Amendment rights were violated when Quinn, Manell, Torres, and Washer failed to protect him from harm from other inmates by refusing to remove Phelan from the hostile "C" gallery.  Second Am. Compl. ¶ 5, 11.  Phelan alleges that his Eighth Amendment rights were violated when Washer refused to protect him from harm from other inmates by returning him to the hostile "C" gallery.  Id. ¶ 9.  Additionally, Phelan alleges that his First Amendment right to seek redress of grievances was violated

when McDonald, Warrington, Swan, Hayes, and Gebo, on separate occasions, ransacked his cell, discarded his grievances and lawsuits, and destroyed his personal property. Defendants Quinn, Manell, Torres, Washer, McDonald, Warrington, Swan, and Gebo seek dismissal contending Phelan's claims are meritless.  Dkt. No. 36-1 at 3.

## A.  Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face."  Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its

6

judicial experience and common sense."  Iqbal, 556 U.S. at 680.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled
> to special solicitude, that a pro se litigant's submissions must be construed
> liberally, and that such submissions must be read to raise the strongest
> arguments that they suggest. At the same time, our cases have also indicated
> that we cannot read into pro se submissions claims that are not consistent
> with the pro se litigant's allegations or arguments that the submissions
> themselves do not suggest that we should not excuse frivolous or vexatious
> filings by pro se litigants, and that pro se status does not exempt a party from
> compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff #1,

537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have

reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to

construe his pleadings liberally.'" (citations omitted)).


**B.  Eighth Amendment**

The Eight Amendment explicitly proscribes the infliction of "cruel and unusual

punishment."  U.S. Const. amend. VIII.  Eighth Amendment obligations include the duty to

protect prisoners from other known harms.  Farmer v. Brennan, 511 U.S. 825, 829 (1970);

Matthews v. Armitage, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (citations omitted).  The

test for a § 1983 claim is two-pronged.  First, the prisoner must establish that the

deprivation alleged was objectively, sufficiently serious.  Farmer, 511 U.S. at 834.  Second,

the prisoner must show that the prison official demonstrated deliberate indifference, a

subjective standard, by having knowledge of the risk of harm and failing to take measures to avoid the harm.  Id.

As in the present case, "claims involving the risk of suicide have been articulated and addressed as violations of the duty to protect, particularly when asserted against non-medical personnel . . . ."  Allah v. Kemp, No. 9:08-CV-1008 (NAM/GHL), 2010 WL 1036802, *4 (2010) (citations omitted).[7]  For a failure to protect claim, "the deprivation is sufficiently serious if the inmate is incarcerated under conditions imposing a substantial risk of serious harm."  Farmer, 511 U.S. at 834; Matthews, 36 F. Supp. 2d at 124–25.  Further, a prison official acts with deliberate indifference when he is aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists and in fact draws that inference, yet disregards the substantial risk to the prisoner's health and safety.  Farmer, 511 U.S. at 837; Matthews, 36 F. Supp. 2d at 125.  To establish the Eighth Amendment claim regarding the defendants' failure to protect Phelan from self-inflicted harm, Phelan must assert that the defendants' actions in continuing to subject him to the inmates' verbal harassment and failing to remove him from the "C" gallery, and conversely in returning him to the same gallery at a later time, triggered an objectively serious risk of harm, specifically, Phelan's suicidal tendencies, of which defendants were deliberately indifferent.

Quinn, Manell, Torres, and Washer correctly contend that Phelan failed to assert sufficient facts to support an Eighth Amendment violation when Phelan argued a failure to protect claim based upon being housed in a hostile cellblock.  First, Phelan has failed to proffer sufficient facts to establish the objective prong.  Courts in the Second Circuit have

---

[7]All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

differed on how to evaluate suicidal tendencies under the objective prong.  See Pooler v. Nassau Univ. Med. Ctr., 848 F. Supp. 2d 332, 346-47 (E.D.N.Y. 2012) (discussing how some courts have held that suicidal tendencies constitute an objectively serious medical condition while others have employed the "reasonable care" test).  This district has held that depression that manifests in an attempted suicide has been considered sufficiently serious for purposes of an Eighth Amendment violation.  Zimmerman v. Burge, No. 9:06-CV-0176 (GLS/GHL), 2009 WL 3111429, *8 (N.D.N.Y. Sept. 24, 2009).  While Phelan is assigned to a mental health level 1 facility, Phelan does not allege that he has any underlying diagnosis that would trigger a suicide attempt through verbal harassment.  Phelan indicated that the only harms he suffered from forced proximity with the "C" gallery inmates were sleep deprivation and verbal abuse.  If defendants were aware of such a diagnosis, or that continual verbal harassment by inmates would trigger an underlying diagnosis, resulting in a harmful situation, the objective prong would be met.  However, there is nothing in the record to plausibly conclude that a reasonable officer would connect Phelan's suicide attempt to a pre-existing mental illness.  Thus, the objective prong has not been sufficiently pled and defendants' motion should be granted on this ground.

    Assuming that the objective prong was satisfied, Phelan still failed to plead sufficient facts for the subjective prong of deliberate indifference.  Phelan does not allege that Quinn, Manell, Torres, or Washer were aware of any previous suicide attempts or thoughts, or any other underlying mental health diagnoses.  Phelan also failed to plead plausible allegations that these defendants actually knew that subjugation to repeated inmate harassment would create a substantial risk of a suicide attempt.  Additionally, prison authorities should be accorded great deference with regards to the prison's programming and placement of

inmates as they see fit "to preserve internal order and discipline and to maintain institutional security." Allen v. Couglin, 527 F. Supp. 1096, 1097 (N.D.N.Y. 1981) (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)).  There is nothing in the record to indicate that Phelan required a special placement based on a proclivity to repeat suicide attempts.  Moreover, even though Washer was aware of Phelan's suicide attempt and experiences with inmate harassment in the "C" gallery, Phelan does not allege that the verbal harassment caused his suicide attempt.  Thus, Washer's reassignment of Phelan to the "C" gallery does not constitute an Eighth Amendment violation.  Accordingly, defendants' motion should be granted on this ground.


## C.  First Amendment

Phelan has sufficiently alleged facts supporting a retaliation claim against McDonald, Warrington, Swan, Hayes, and Gebo.  Phelan contends that on separate occasions and in retaliation for filing grievances, McDonald, Warrington, and Swan ransacked his cell, discarded his grievances and legal papers, and destroyed his personal property.  Similarly, Phelan alleges that Hayes, and Gebo also ransacked his cell and destroyed his personal property.  Retaliation claims such as those asserted by Phelan are rooted in the First Amendment.  Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214 (2008).  Courts approach these claims "with skepticism and particular care" as "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003).  Thus, to state an actionable claim

for retaliation under the First Amendment, a plaintiff must allege:  "(1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action."  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004).  Conclusory allegations alone are insufficient.  Jackson, 549 F. Supp. 3d at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).

Because the filing of prison grievances is a constitutionally protected activity, Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996); Mateo v. Fischer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010), Phelan meets the first prong of the test.  Further, Phelan has sufficiently alleged facts constituting adverse actions against McDonald, Warrington, Swan, Hayes, and Gebo.  "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  Davis, 320 F.3d at 353 (internal quotation marks and citations omitted).  All other conduct is de minimis and falls outside the confines of constitutional protection.  Id. (citing Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).  Phelan's cell was ransacked once in January 2011, once in February 2011, and three times in March 2011.  While the Second Circuit has found that two searches of the plaintiff's cell and of the person over a six-month period are insufficient to show adverse action, Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012), the searches at issue were beyond routine.  Grievances, legal documents, and personal property were either taken or destroyed during the searches.  "The unauthorized destruction of a prisoner's property can form the basis for a retaliation claim."  Jones v.

11

Harris, 665 F. Supp. 2d 384, 399 (S.D.N.Y. 2009) (citations omitted).  Moreover, liberally

construing Phelan's second amended complaint, the frequency and nature of the alleged

searches would deter a similarly situated inmate from exercising his constitutional right to

file grievances.  Davis, 320 F.3d at 353-54.  Thus, Phelan's allegations have sufficiently

established adverse actions.

Finally, in order to satisfy the causation requirement, a plaintiff's allegations must be

"sufficient to support the inference that the [protected conduct] played a substantial part in

the adverse action."  Davis, 320 F.3d at 354.  "Types of circumstantial evidence that can

show a causal connection between the protected conduct and the alleged retaliation include

temporal proximity . . . ."  Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007)

(citations omitted).

> There is no bright line to define the outer limits beyond which a temporal
> relationship is too attenuated to establish a causal relationship, so courts
> judge the permissible inferences that can be drawn from temporal proximity in
> the context of particular cases.  However, courts have found that six and eight
> month gaps between the protected conduct and adverse action were
> sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and

citations omitted); see also Perez v. Fischer, No. 10-CV-518 (LEK/DRH), 2012 WL

1098423, *16 (N.D.N.Y. Mar. 1, 2012) (finding that a seven-week lapse between the filing of

a grievance and a subsequently issued misbehavior report was well within the time noted by

courts to demonstrate temporal proximity).

Although inartfully pled, Phelan has sufficiently alleged a causal connection between

the alleged protected activity and adverse actions.  McDonald and Warrington ransacked

12

Phelan's cell approximately eleven days after Phelan filed a grievance against them for threatening physical harm.  McDonald and Swan ransacked Phelan's cell approximately one month after Phelan filed grievances against McDonald for previously ransacking Phelan's cell and against Swan for threatening physical harm.  Finally, Hayes and Gebo ransacked Phelan's cell three times within five days, beginning from approximately one week after Phelan filed a grievance against them for threatening physical harm.  The temporal proximity between the various grievance filing dates and the destruction of grievances and personal property, none of which was more than one month, sufficiently establish the causal connections.  Accordingly, defendants' motion on this claim should be denied.


### III.  Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that defendants' motions to dismiss (Dkt. No. 36) be:

   A.   **DENIED** as to the retaliation claims against defendants McDonald, Warrington, Swan, and Gebo; and

   B.   **GRANTED** as to the failure to protect claims against defendants Quinn, Manell, Torres, and Washer.

2. Further **RECOMMENDED** that, for the sake of judicial efficiency, the surviving claims and defendants, specifically Phelan's

   A.   Eighth Amendment excessive force claims against defendants Owens, Fuller, Gebo, Kiser, and Murphy arising out of incidents occurring on

13

December 29, 2010; and

B.     First Amendment retaliation claims against:

   i.      Defendants McDonald and Warrington with respect to the cell
           search and resulting destruction of legal documents and
           grievances occurring on January 21, 2011;

   ii.     Defendants McDonald and Swan with respect to the cell search
           and resulting destruction of grievances occurring on March 9,
           2011; and

   iii.    Defendants Gebo and Hayes with respect to the cell search and
           resulting destruction of property occurring on March 9, 11, and
           13, 2011;

should be consolidated into a final, third amended complaint, which should contain all

relevant facts regarding these claims as alleged in Phelan's opposition papers to

defendants' present motion.

3.  Should this recommendation be adopted, it is also **RECOMMENDED** that upon

the filing of the third amended complaint, the pleadings should be returned to the

undersigned for further review to ensure compliance, at which point, the Court will

direct service by the U.S. Marshals on defendant Hayes.  See FED. R. CIV. P. 4(c)(2)

(Marshals Service must be appointed to serve process when plaintiff is authorized to

proceed in forma pauperis); 28 U.S.C. § 1915(d) ("The officers of the court shall

issue and serve all process, and perform all duties in [in forma pauperis] cases.").

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  September 20, 2012
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge