**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

KENNETH J. PHELAN,

                            Plaintiff,

          v.                            No. 11-CV-314
                                       (DNH/CFH)

QUINN, Correctional Officer, Great Meadow
Correctional Facility; et al.,

                           Defendants.

_____

**APPEARANCES:**                      **OF COUNSEL:**

Kenneth J. Phelan
Plaintiff Pro se
09-A-1183
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403


HON. ERIC T. SCHNEIDERMAN        ADRIENNE J. KERWIN, ESQ.
Attorney General for the               Assistant Attorney General
  State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

     Plaintiff <u>pro se</u> Kenneth J. Phelan, an inmate who was, at all relevant times, in the

custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12101, the

_____

     [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Americans with Disabilities Act ("ADA"). Phelan alleges that (1) defendants, Great Meadow correctional officers David Swan, Eric Warrington, David Gebo, Michael McDonald, and Derek Hayes violated his rights under the First Amendment[2] and the ADA; and (2) defendants (a) correctional officers Jesse Fuller, Noah Keiser,[3] George Murphy, David Gebo, and (b) Robert Owens, Sergeant at Great Meadow, violated his constitutional rights under the Eighth Amendment, as well as his rights under the ADA. Dkt. No. 53 ("Third Am. Compl."). Additional defendants were named, but the claims against them have since been dismissed. Dkt. No. 43, at 13; Dkt. No. 45; Dkt. No. 54.[4] The court directed Phelan to execute a Third Amended Complaint limited to (1) excessive force claims against defendants Owens, Fuller, Gebo, Keiser, and Murphy relating to incidents occurring on December 29, 2010; and (2) First Amendment retaliation claims against defendants McDonald, Warrington, Swan, and Gebo. Dkt. No. 43. Thereafter, defendant Hayes was added as a defendant in this action. Dkt. No. 54. Phelan seeks injunctive, compensatory, and punitive relief, as well as attorney's fees. For the following reasons, it is recommended that defendants' motion for summary judgment be granted in part and denied in part.

_____

[2] Phelan suggests that the cell searches violated DOCCS directive 4910(V)(E)(2) (Dkt. No. 87-1, at 17-18); however, a section 1983 claim is not the "appropriate forum" in which to seek review of a violation of a prison regulation. Rivera v. Wohlrab, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[A] § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulation or state law . . . the allegations asserted must constitute violations of constitutional due process standards.").

[3] The docket contains papers referring to defendant both as "Kiser" and "Keiser." This Report and Recommendation will use the spelling "Keiser," as reflected by the spelling used in his declaration. Dkt. No. 76-4.

[4] Throughout this Report-Recommendation, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not to the page numbers used by the parties in the individual documents.

## II.  Background

### A.  Use of Force

The facts are reviewed in the light most favorable to Phelan as the non-moving party.

See subsection III (A) infra.  Phelan alleges that on December 29, 2010, he attempted to

commit suicide by placing a noose around his neck and tying the free end to the top bar of

his cell.  Third Am. Compl. at 4.  He later attempted to tie the noose to his cell's clothesline,

but took it down when ordered by a correctional officer.  Id.  Shortly after taking down the

noose, defendant Owens arrived at Phelan's cell and ordered defendants Fuller, Keiser,

Gebo, and Murphy "to run into [Phelan's] cell and beat [him] up . . . ."  Id.  Although Phelan

had his back turned to defendants, with his "hands behind [his] back waiting to be

handcuffed," defendants Fuller, Gebo, Keiser, and Murphy "threw [him] on floor and beat

the crap out of [him], punching and kicking [him] in back and face, cutting [his] eye open,

twisting [his] thumb & right ankle, instead of just cuffing [him]."  Id. at 4-5.  Phelan obeyed

all orders and did not resist.  Dkt. No. 87, at 3.  Defendant Fuller threw him to the ground

and punched him in his left temple area.  Id.  Defendant Fuller also twisted Phelan's left

thumb, "almost breaking it."  Id.  Another defendant twisted Phelan's right foot, "almost

breaking it," while the other defendants punched him "all over [his] body."  Id. at 4.

Defendants allegedly assaulted Phelan due to his disabilities – Attention Deficit Disorder

and "a Tramatic [sic] Brain Injury.  Third Am. Compl. at 5.[5]  Phelan believes that defendants

"get their recreation & kicks" by "beating up disabled inmate/patients in the B.H.U."  Id. at 4-

5.

---

[5]  Phelan also contends that he is "a mental health level '1S' in D.O.C.S. [sic]," but
fails to define this designation or explain its relevance.  Third Am. Compl. at 3.

As a result of the assault, Phelan suffered a laceration over his left eyebrow, necessitating stitches; redness to his anterior neck; abrasions to his back, right wrist, and left hip; and indentation of the skin on both of his wrists, secondary to the handcuffs. Third Am. Compl. at 5; Dkt. No. 87, at 17. Phelan filed a complaint with the Inspector General. Dkt. No. 87-1, at 4. Phelan contends that he did not submit a grievance through Great Meadow's grievance program because he "was still under the very real threat of more serious physical harm happening to [him] again had [he] used the facility grievance procedure." Id.

## B. **Cell Searches**

### a. **January 21, 2011**

Phelan contends that on January 18, 2011, he told a sergeant that defendants McDonald and Warrington called him "retard" and "carrot top" and threatened him. Third Am. Compl. at 6. After making this complaint, defendant McDonald or defendant Warrington threatened Phelan by telling him to "drop the grievances[,] or else," which Phelan interpreted as relating to his complaint to the sergeant. Dkt. No. 76-1, at 27-28. Three days later, defendants McDonald and Warrington performed a cell search of Phelan's cell, and, in the process, "tore up" his cell, took all of his legal papers out of their envelopes, and "threw out some lawsuits and [his] grievances." Third Am. Compl. at 6. It took Phelan three weeks to reorganize his cell. Id. Defendants McDonald and Warrington "trashed" Phelan's cell in retaliation for his complaining to the sergeant and "filing grievances." Id. at 6-7. Phelan also states that, because defendants McDonald and

4

Warrington took or destroyed the legal papers from "case number[s] 9:10-CV-540 and 10-CV-11," this proves that McDonald and Warrington acted in retaliation on behalf of the defendants in those cases.[6]  Id. at 7; Dkt. No. 76-1, at 28.   Phelan did not file a grievance relating to this cell search.

### b. **March 9, 2011**

Phelan contends that defendants McDonald and Swan "trashed" his cell during a cell search on March 9, 2011.  Third Am. Compl. at 7.  The defendants acted out of discrimination due to Phelan's disabilities "and because they want to stop [him] from filing law suits and hamper [his] ability to prosecute them."  Id. at 7-8.   Phelan also suggests that the search was in retaliation for his "trying to file grievances and lawsuits."  Dkt. No. 53, at 8; Dkt. No. 87-1, at 14.  During the March 9 search, defendants McDonald and Swan "took every paper out of every envelop [sic]" and "threw out [his] legal research papers."  Third Am. Compl. at 8.  It took Phelan two weeks to reorganize his belongings.  Id.  Phelan contends that "it looked like [a] tornato [sic] hit [his] cell" and believes that it "was not a normal cell search."  Id.  Phelan filed a grievance relating to this search, but did not appeal to CORC.  Dkt. No. 76-3, at 5-7; Dkt. No. 76-8, at 4-7.

---

[6]  Case number 10-CV-540 was filed in May 10, 2010 against Albany County and officials from Albany County Jail.  It involved complaints regarding medical care and living conditions and raised due process violations.  Case number 10-CV-11 was filed January 5, 2010, and involved defendants associated with Mount McGregor Correctional Facility, Gowanda Correctional Facility, and Collins Correctional Facility.  A review of the dockets in these cases show that Phelan was sent to Southport Correctional Facility on January 28, 2010; Auburn Correctional Facility on February 23, 2010 and March 5, 2010; Five Points Correctional Facility on June 30, 2010; and then Great Meadow Correctional Facility on November 1, 2010.

### c. **March 11, 2011**

Phelan appears to suggest in some of his submissions that his cell was also searched on March 11, 2011. Third Am. Compl. at 9. Phelan does not provide factual information about this cell search, including the defendants he alleges to have been involved. Phelan filed one grievance collectively contending that he was subjected to retaliatory cell searches on March 9, 11, and 13 of 2011. Dkt. No. 76-8, at 4. Defendants contend that Phelan's cell was not searched on March 11 and provide a document entitled the "BHU Random Cell Frisk," a computer generated list which identifies the cells which were to be randomly searched. Id. at 4, 8. This document states that Phelan's cell was searched on March 9 and 13. Id.

### c. **March 13, 2011**

On March 13, 2011, defendants Hayes and Gebo "tore up" Phelan's cell. Third Am. Compl. at 9. Defendants Hayes and Gebo smeared butter on Phelan's sheets and towel, ripped up his pictures, and placed his toothbrush into the toilet. Id. Phelan believes that this cell search was motivated by "discrimination[] and harassment." Id. Phelan contends that, on March 2, he had filed a grievance against Hayes and Gebo for threatening him with physical harm. Dkt. No. 41, at 7. Phelan filed a grievance relating to the March 13 search, but did not appeal the denial to CORC. Dkt. No. 76-3, at 5-7; Dkt. No. 76-8, at 4-7.

### III. **Discussion**[7]

---

[7] All unpublished decisions cited herein, unless otherwise indicated, are attached to this Report-Recommendation.

Phelan contends that defendants Owen, Keiser, Murphy, Fuller, and Gebo, violated the Eighth Amendment by using excessive force during the December 29 incident.  Phelan further argues that defendants McDonald, Warrington, Swan, Hayes, and Gebo violated his rights under the First Amendment by implementing discriminatory, harassing, and destructive cell searches in retaliation for his filing lawsuits, grievances, and/or making complaints about them and other corrections officers.  Finally, Phelan contends that the assault and cell searches violated the ADA because he was targeted due to his disabilities.

## A. **Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd.

Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

## B. **Exhaustion**

Defendants contend that their motion for summary judgment must be granted because Phelan failed to exhaust his administrative remedies. Specifically, defendants argue that Phelan failed to grieve his excessive force claim and did not appeal the grievances for any of the cell searches. Under 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust all administrative remedies before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules

8

applicable to the correctional facility in which he or she is incarcerated.  <u>Jones v. Bock</u>, 549

U.S. 199, 218 (2007) (internal citation omitted).  The exhaustion requirement applies even if

the administrative grievance process does not provide for all the relief requested by the

inmate.  <u>Nussle</u>, 534 U.S. at 524.

 Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit

has recognized that "certain caveats apply."  <u>Ruggiero v. County of Orange</u>, 467 F.3d 170,

175 (2d Cir. 2006) (citing <u>Giano v. Goord</u>, 380 F.3d 670, 677 (2d Cir. 2004)).  Thus, a court

must conduct a three-part inquiry to determine whether an inmate's failure to follow the

applicable grievance procedures is fatal to his or her claims.  A court must consider

whether:

> (1) administrative remedies are not available to the prisoner;
> (2) defendants have either waived the defense of failure to exhaust or
> acted in such a way as to estop them from raising the defense; or (3)
> special circumstances, such as a reasonable misunderstanding of the
> grievance procedures, justify the prisoner's failure to comply with the
> exhaustion requirement.

<u>Ruggiero</u>, 467 F.3d at 175 (citing <u>Hemphill v. New York</u>, 380 F.3d 680, 686 (2d Cir. 2004)).

 Administrative remedies are unavailable when there is no "possibility of [] relief for the

action complained of."  <u>Abney v. McGinnis</u>, 380 F.3d 663, 667 (2d Cir. 2004) (citing <u>Booth</u>

<u>v. Churner</u>, 532 U.S. 731, 738 (2001)).  The test to determine the availability of an

administrative remedy is an objective one: whether "a similarly situated individual of

ordinary firmness" would have deemed it available.  <u>Id.</u> at 688; <u>Hemphill</u>, 380 F.3d at 688

(citation omitted).  Unavailability may be found in circumstances "where plaintiff is unaware

of the grievance procedures or did not understand it . . . or where defendants' behavior

prevents plaintiff from seeking administrative remedies."  <u>Hargrove v. Riley</u>, No.

CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. Jan. 31, 2007) (internal citations omitted). Further, "where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the defendant, and thus the [PLRA] does not preclude the prisoner from suing in federal court." Thomas v. New York State Dep't of Corr. Servs., 00-CV-7163 (NRB), 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002) (citations omitted); cf. Hemphill, 380 F.3d at 688 (concluding that threats or intimidation may render initial grievance stage unavailable, but not an appeal "directly to individuals in positions of greater authority within the prison system, or to external structures of authority . . . .").

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.5 (2014). First, the inmate is required to file a complaint with an inmate grievance program clerk ("IGP") within twenty-one days of the alleged incident. Id. at § 701.5 (a) (1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5 (b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after conclusion of the hearing. Id. §§ 701.5 (b)(2)(i), (ii). If unfavorable, a grievant may appeal the IGP committee's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5 (c) (1). If the superintendent's determination is unfavorable, the grievant may take the third step of the grievance procedure by appealing to the central office review committee ("CORC") within seven days after receipt of the unfavorable superintendent's determination. Id. §§ 701.5 (d)(i),(ii). CORC must issue a written decision within thirty days of receipt of the grievant's appeal. Id. § 701.5 (d)(2)(ii).

### i. **December, 29 2010 assault**

The record provides, and Phelan does not dispute, that he failed to grieve his excessive force claim. Dkt. No. 76-3, at 3, 5-7; Dkt. No. 76-8, at 1, 4-8. Phelan appears to contend that the administrative remedies were unavailable to him because he feared that if he filed grievances or appeals, defendants would cause him further physical harm. Dkt. No. 87-1, at 4-6. Phelan suggests that he feared retaliatory physical assaults because of conduct of the defendants involved in the December 29, 2010 excessive force incident and threats from some defendants. Dkt. No. 76-1, at 27. As Phelan alleges that he experienced physical injury at defendants' hands as a result of his disability, a similarly-situated person of reasonable firmness would avoid grieving the December 29, 2010 assault out of fear that Owens, Keiser, Murphy, Fuller, or Gebo would exert force against him had he formally grieved their conduct. Thus, Phelan presents questions of fact whether defendants Owens, Keiser, Murphy, Fuller, and Gebo rendered the administrative remedies unavailable to him as it relates to the December 29 assault.

Phelan also argues that, although he did not fully grieve his excessive force claim, a letter he sent to the Solicitor General was sufficient to exhaust his administrative remedies as to that complaint. Dkt. No. 87-1, at 4. The letter to the Solicitor General would not fulfill exhaustion requirement because Great Meadow had in place a formal grievance procedure. See, e.g., Goodson v. Silver, No. 09-CV-494 (GTS/DRH), 2012 WL 4449937 (N.D.N.Y. Sept. 25, 2010) (citation omitted) ("[d]istrict courts appear to uniformly agree that, without a referral from a superintendent, an I[nspector] G[eneral]'s investigation of the matter . . . does not satisfy the exhaustion requirement . . . ."); see also Grey v. Sparhawk, 99 CIV. 9871 HB, 2000 WL 815916, at 2 (S.D.N.Y. Jun. 23, 2010) (a complaint "made directly to the

Inspector General's Office does not serve to excuse [a] plaintiff from adhering to the available administrative procedures.").

Accordingly, it is recommended that defendants Owens, Keiser, Murphy, Fuller, and Gebo be estopped from arguing exhaustion of administrative remedies as it relates to the December 29 assault.


### ii. **January 21, 2011 search**

Next, Phelan suggests that his failure to grieve the January 21 cell search was due to his fear that McDonald and Warrington would retaliate against him. Phelan contends that McDonald and Warrington were calling him names and threatening him before the January 21 cell search occurred and, after he complained about their conduct, McDonald or Warrington said to "drop the grievances or else," followed soon after by the destructive search. Defendants argue that Phelan was able to exhaust his remedies because he was able to grieve the search that occurred approximately six weeks after the January cell search which also involved defendant McDonald and raised similar complaints.

Although courts require more than a claim of "generalized fear" in order to state a claim for retaliation (Brown v. Napoli, 687 F.Supp.2d 295, 298-99 (W.D.N.Y. 2009)), "courts generally find that specific affirmative threats of retaliation are sufficient to 'deter a prisoner of ordinary firmness from filing an internal grievance.'" Rodriguez v. County of Suffolk, No. CV 13–2070 (SJF/GRB), 2014 WL 3531897, at *5 (E.D.N.Y. Jun. 30, 2014) (internal quotation marks omitted) (quoting Hemphill, 380 F.3d at 688). Relating to the January 21 cell search, Phelan contends that, on January 18, shortly after he complained to a sergeant about McDonald and Warrington making threats of physical violence against him, either

McDonald or Warrington told him to "drop the grievances, or else." Dkt. No. 87-1, at 6.

Defendants' argument would be correct, had Phelan not articulated the threat at issue.

Thus, as it relates to the January 21 claim, Phelan is able to "specifically recount[]" a

threatening statement and demonstrate his acquiescence by declining to file a grievance

through the facility process. Hemphill, 380 F.3d at 688. Although, as defendants point out,

Phelan filed a grievance relating to the March 2011 cell searches, such searches occurred

six weeks after the assault and involved a retaliatory and destructive cell search, not

physical violence.

Accordingly, it is recommended that defendants Warrington and McDonald be

estopped from asserting failure to exhaust as it relates the January 21 search.

### iii. **March 9 and March 13, 2011 searches**

Although Phelan submitted grievances for the March 9 and March 13 cell searches, he

did not appeal these grievances to CORC. Dkt. No. 76-3, at 5-7; Dkt. No. 76-8, at 2.

Inasmuch as Phelan's submissions suggest that he failed to appeal his grievances

regarding the March 2011 cell searches because of fear of retaliation, such claim is not

persuasive. Case law provides that an inmate's claim of fear of retaliation does not prevent

him or her from appealing to higher prison authorities. Hemphill, 380 F.3d at 688

("[T]hreats or other intimidation by prison officials may well deter a prisoner of 'ordinary

firmness' from filing an internal grievance, but not from appealing directly to individuals in

positions of greater authority within the prison system, or to external structures of authority

such as state or federal courts."). Thus, because Phelan initiated the grievance process,

there was no excuse for his failure to appeal any denials up the proper chain of command.

13

Moreover, despite his claims of fear, within just days of the occurrences of the March cell searches, Phelan filed, and thereafter fully exhausted, a grievance in another case.  Dkt. No. 76-3, at 6 (Grievance No. GM-51554-11 filed on March 14, 2011); see Harrison v. Goord, No. 07-CV-1806(HB), 2009 WL 1605770, at *6 (S.D.N.Y. Jun. 9, 2009) (citations omitted) (holding that alleged threats to an inmate by DOCCS employee were insufficient to render administrative remedies unavailable where inmate continued to file grievances immediately after threats were made).  These actions belie Phelan's contentions that the threats and retaliation that occurred in March rendered the grievance process unavailable to him.

Accordingly, it is recommended that defendants' failure to exhaust defense be (1) granted regarding the March 9 and 13, 2011 cell searches; and (2) denied as to the December 29, 2010 excessive force incident and the January 21, 2011 cell search.

## C. **First Amendment - Retaliation**

Phelan argues that defendants McDonald and Warrington violated the First Amendment by implementing the January 21, 2011 cell search in retaliation for filing complaints, grievances, and lawsuits.[8]

The Second Circuit has stated that an inmate has a substantive due process right not to

---

[8]  To the extent Phelan's Third Amended Complaint could be interpreted as contending that the December 29 assault violated his First Amendment rights, such a claim would lack merit because, as this Court has previously noted, "having a mental handicap or disability clearly is not protected 'speech or conduct.'" Phelan v. Hersh, 10–CV–0011 (GLS/RFT), 2011 WL 6031940, at *7 n.10 (N.D.N.Y. Sept. 13, 2011) .

be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. Jones v. Coughlin, 45 F.3d 677, 679–80 (2d Cir.1995); Franco v. Kelly, 854 F.2d 584, 589–90 (2d Cir.1988). Claims of retaliation are rooted in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials are prohibited from taking actions which could have a chilling effect on an inmate's exercise of First Amendment rights. Gill v. Pidlypchak, 389 F.3d 379, 381–83 (2d Cir. 2004). However, it is well settled that courts are to "approach [First Amendment] retaliation claims by prisoners with skepticism and particular care." See e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (citing Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, NA, 534 U.S. 506 (2002)). Thus, a retaliation claim brought under section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. Ashcroft, 556 U.S. at 678; South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009).

To defeat a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes, 239 F.3d at 492; Taylor v. Fischer, 841 F.Supp.2d 734, 737 (W.D.N.Y. 2012). Adverse action is conduct "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Dawes, 239 F.3d at 493. "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the

disciplinary hearing, and statements by defendants as to their motives." <u>See</u> <u>Barclay v.</u> <u>New York</u>, 477 F.Supp.2d 546, 588 (N.D.N.Y. 2007).   A plaintiff can meet this burden by presenting circumstantial evidence of a retaliatory motive, obviating the need for direct evidence.  <u>Bennett v. Goord</u>, 343 F.3d 133, 139 (2d Cir. 2003).   If the plaintiff is able to meet his or her burden, the defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct."  <u>Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977).

Phelan is able to meet the first prong of the test.  He contends that McDonald and Warrington retaliated against him for lodging complaints about them to the sergeant and subsequently filing grievances regarding the defendants' actions. Dkt. No. 53, at 7.  It is well settled that an inmate has a constitutional right to submit complaints and grievances arising out of matters relating to his incarceration.  <u>United Mine Workers of Am., Dist. 12 v.</u> <u>Illinois State Bar Ass'n</u>, 389 U.S. 217, 222 (1967)(citation omitted) ("The Supreme Court has noted that the right to petition government for redress of grievances is 'among the most precious of the liberties safeguarded by the Bill of Rights.'"); <u>see</u> <u>also</u> <u>Smith v. Woods</u>, No. 9:03–CV–480, 2006 WL 1133247, at *10 (N.D.N.Y. April 24, 2006) (finding that oral complaints to corrections officers may have First Amendment protection for purposes of a retaliation claim), <u>aff'd</u> 219 F.Appx. 110 (2d Cir. 2007).  However, the second and third prongs are less clear.

As it relates to the January 21 search, Phelan contends that the adverse action imposed is the destructive cell search and resulting property damage.  Some district courts in this Circuit, including this district, have held that a retaliatory cell search is not an

16

"adverse action" for purposes of a First Amendment claim. Williams v. King, No. 11–CV–1863 (SAS), 2014 WL 4670866, at *2 (S.D.N.Y. Sept. 19, 2014) (citing Williams v. King, 11-CV-1963 (SAS), 2013 WL 3925230 (S.D.N.Y. Aug. 11, 2014) (cell search not adverse action absent "alleged planting of evidence and other allegedly disproportionate administrative actions that follow . . . ."); see also Partak v. Behrle, 09-CV-1256 (FJS/ATB), 2011 WL 7629500, at *15 (N.D.N.Y. Sept. 12, 2011)(citing cases)("it is well-settled that retaliatory cell searches are not actionable under section 1983"); Walker v. Keyser, No. 98 CIV 5217(DC), 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 2, 2001) ("retaliatory searches are not actionable under § 1983). However, the intentional, retaliatory destruction of grievances, legal papers, and other personal property has been held to be sufficient to state a claim for retaliation. Chaney v. Koupash, No. 04-CV-136 (LEK/DRH), 2008 WL 5423419, at *10 (N.D.N.Y. Sept. 26, 2008) (citation omitted); see also Smith v. City of New York, 03 Civ 7576 (NRB), 2005 WL 1026551, *3 (S.D.N.Y. May 3, 2005).[9] This is especially true where the plaintiff demonstrates that the defendants' conduct was "designed specifically to deter [the] plaintiff's exercise of his constitutional rights through the destruction of his legal papers." Smith, 2005 WL 1026551 at *3 (citing Salahuddin v. Mead, 95 Civ. 8581, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002)).

Here, because Phelan alleges that McDonald and Warrington destroyed or took his

---

[9] Although Phlean does not allege a due process violation in connection with McDonald and Warrington's taking of his legal paperwork and grievances, to the extent such an argument may be inferred, the undersigned notes that because there were adequate forms of recourse – such as complaining to supervisors, submitting grievances, as well as state court remedies – such confiscation of property would not violate his procedural due process rights under the Fourteenth Amendment. See Tafari v. McCarthy, 714 F.Supp.2d 317, 344 (N.D.N.Y. 2010) (quoting Hudson, 468 U.S. at 533).

legal paperwork and grievances in retaliation for his exercise of First Amendment rights, and appear to have destroyed legal paperwork and grievances in an effort to deter future exercise of this right, Phelan has established an adverse action substantial enough to satisfy the second prong of the test. However, Phelan's contention that the cell searches themselves constituted an adverse action is insufficient to establish the second prong of the test. Accordingly, at this juncture, Phelan has alleged sufficient retaliatory conduct – the destruction of his legal paperwork and grievances during the cell search which occurred on January 21.

To satisfy the final prong, Phelan must establish a causal connection "sufficient to support the inference 'that the speech played a substantial part' in the [] adverse [] action." Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (quoting Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 780-81 (2d Cir. 1991). Phelan first states that there exists a causal connection between his protected speech and the alleged adverse action because of temporal proximity. McDonald and Warrington took his legal documents and grievances just three days after he made a complaint to a sergeant about them. See, e.g., Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (short time frame between grievance and retaliatory action, along with allegation of the defendant's involvement, sufficed to support an inference of a retaliatory motive), abrogated on other grounds, Porter v. Nussle, 534 U.S. 516 (2002)). Although there is no "bright line" establishing the time frame appropriate for establishing temporal proximity, three days between the protected conduct and adverse action appears sufficiently close to support an indication of a causal connection. Burton v. Lynch, 664 F.Supp.2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted); see also Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009)

18

(holding that passage of six months between protected conduct and adverse action sufficiently supported an inference of a causal connection).

Next, Phelan offers direct evidence to support his claim that defendants' conduct was motivated by his complaints to the sergeant or his attempt to file grievances against them. Dkt. No. 87-1, at 7. Phelan points out that, shortly before the January 21 cell search, either McDonald or Warrington told him to "drop the grievances, or else." Dkt. No. 76-1, at 27. Such a claim suggests that defendants took the grievances and lawsuits because of the complaints Phelan lodged against them. See Smith, 2005 WL 1026551, at *4 (holding that the plaintiff established causal connection between his protected speech, the filing of lawsuits, and defendants' retaliatory conduct, destruction of his legal materials from that lawsuit, where the plaintiff demonstrated that the correctional officer was aware of the lawsuit and, in response to plaintiff's inquiry regarding why property was taken, responded, "I don't like you, I'm pretty sure you know why."). This statement, when considered with the circumstantial evidence indicating that the alleged retaliatory conduct occurred three days following the protected conduct, appears sufficient for reasonable fact finder to find a causal connection between the destruction or theft of Phelan's grievances and legal property and his protected conduct. See id. at *4 (citing Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995) (concluding that officer's statement that he did not like the plaintiff, combined with circumstantial evidence of temporal proximity between protected speech and adverse action, established issues of fact regarding the motivation behind the destruction of the plaintiff's property)).

In response to Phelan's arguments, defendants contend that the cell search would have occurred, even in the absence of protected First Amendment conduct on Phelan's part.

19

However, this argument is not sufficient to meet their burden because, although defendants allege that the January 21 cell search was part of a random routine search that would have occurred, regardless of retaliatory intent, Phelan is not only challenging the timing of the search, but the out-of-the-ordinary destructive conduct that occurred during the search. Doyle, 429 U.S. at 287 (defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct.").

Accordingly, it is recommended that defendants' motion for summary judgment on the First Amendment cause of action be denied.[10]

### D. **Conspiracy**

Phelan contends that defendants McDonald and Warrington stole legal papers in cases 10-CV-540 and 10-CV-11 on behalf of defendants in those cases who asked McDonald and Warrington to take the papers for them. Giving the Third Amended Complaint the required liberal reading, this statement appears to be an assertion of a conspiracy claim. To support

---

[10] To the extent that Phelan's submissions can be interpreted to raise an access to the courts claim (Dkt. No. 87, at 8-9), such a claim must fail because Phelan does not identify any action or proceeding that was hindered as a result of any of defendants' actions. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003); Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (internal citations, quotation marks, and alterations omitted) (quoting Lewis v. Casey, 518 U.S. 343 (1996)) ("In order to establish a violation of access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury,' i.e., took or was responsible for actions that hindered a plaintiff's effort to pursue a legal claim."). Although Phelan alleges that McDonald and Warrington took or threw away legal papers from case numbers 10-CV-540 and 10-CV-11, he does not allege actual harm, i.e. "a nonfrivolous legal claim had been frustrated or impeded." See Lewis, 518 U.S. at 349, 351 (holding that inmate must show an actual injury to sustain a claim for denial of access to the courts).

a claim for conspiracy under section 1983, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002); Cusamano v. Sobek, 604 F.Supp.2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity as bare allegations of a conspiracy are insufficient to support a conspiracy claim. See Cambriello, 292 F.3d at 325.

Phelan raises this conspiracy claim in a vague and conclusory manner. Indeed, his submissions indicate that his sole reason for concluding that McDonald and Warrington conspired with the defendants from case numbers 10-CV-540 and 10-CV-11 is because papers from those cases were "stolen" during the January 21 cell search. Phelan does not identify the parties he believes to have been involved in the alleged conspiracy with McDonald and Warrington, nor does he make a showing of agreement or a "meeting of the minds." Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990), cert denied 499 U.S. 937 (1991). He does not demonstrate that McDonald or Warrington had any knowledge of the existence of these cases or that McDonald or Warrington knew, or otherwise had relationships with, the defendants from either case. This assertion is further bolstered by the fact that these cases were filed several months before Phelan arrived at Great Meadow and involved facilities located in different regions of the state. Indeed, in case number 10-CV-540, the defendants were county employees, not DOCCS employees. A conspiracy claim requires more than "mere speculation or conjecture," (Cusamano v. Sobek, 604 F.Supp.2d 416 (N.D.N.Y. 2009)), and Phelan has presented no nonconclusory arguments.

Accordingly, to the extent Phelan asserts a conspiracy claim involving defendants McDonald and Warrington and the correctional officials sued in case numbers 10-CV-540

and 10-CV-11, it is recommended that such claim be dismissed.

### E. **ADA**

Phelan argues that the December 29, 2010 assault by defendants Owens, Keiser, Murphy, Fuller, and Gebo was motivated by discriminatory animus due to his disabilities. He also alleges that the March 9 cell search was motivated, in part, due to disability discrimination. Dkt. No. 87, at 7. Finally, he contends that he was denied a reasonable accommodation. Third Am. Compl. at 1. Phelan states that his disabilities are Attention Deficit Disorder and traumatic brain injury.

Phelan does not specify what portions of the ADA are triggered by the December 29, 2010 assault. However, reading Phelan's complaint liberally, it appears that he brings this complaint under Title II. See Giraldi v. Bd. of Parole, No. 04–CV–877 (FJS/DRH), 2008 WL 907321, at *5 (N.D.N.Y. Mar. 31, 2008) (concluding that Title II applies to state inmates). Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To prove a violation of Title II, a party must therefore establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." Hargrave v. Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003 (internal quotation marks omitted). The ADA protects against disparate treatment and creates an affirmative duty to provide reasonable accommodations for the disabled.

22

<u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, at 276-77 (2d Cir. 2003).

First, case law provides that individual cannot be named in ADA suits either in their official or representative capacities.  <u>See</u>, <u>e.g.</u>, <u>McFadden v. Roy</u>, Nos. 03–CV–0931 (GTS/DRH), 04–CV–0799 (GTS/DRH), 2009 WL 799968, at *21 (Mar. 25, 2009); <u>see also</u> <u>Alster v. Goord</u>, 745 F.2d 317 (S.D.N.Y. 2010) (holding that the appropriate party in interest for a plaintiff's claims against individual defendants in their official capacities is the state itself).  Here, Phelan only names individual defendants.  Regardless, even assuming Phelan qualifies as a qualified individual with a disability under the first prong of the test, Phelan fails to establish the second element of an ADA claim.  He does not allege that he was denied any service that is provided to nondisabled inmates.  Although Phelan argues that officers Owens, Keiser, Murphy, Fuller, and Gebo assaulted him due to his Attention Deficit Disorder and traumatic brain injury, he fails to contend that these defendants excluded him from participating in, or denied him the benefit of, any particular activity as a result of his alleged disabilities as required under the ADA.  <u>Rodriguez v. City of N.Y.</u>, 197 F.3d 611, 618 (2d Cir. 1999).  This failure is a "fundamental defect" that may lead to the dismissal of his ADA claims.  <u>Lee v. State of New York Dep't of Corr. Serv.</u>, No. 97 Civ. 7112 (DAB), 1999 WL 673339, at *13 (S.D.N.Y. Aug. 30, 1999) (citation omitted) (dismissing ADA claim where inmate failed to allege that he was prevented from certain programs or services in prison because of his blindness); <u>see also</u> <u>Atkins v. County of Orange</u>, 251 F.Supp.2d 1225 (S.D.N.Y. 2003) (holding that mentally disabled inmate-plaintiffs failed to state an ADA violation because did not claim that they were denied any specific service as a result of keeplock placement).

Insofar as Phelan argues that either defendant Warrington or McDonald violated the

ADA by calling him a "retard," use such language, although reprehensible, is not sufficient to state a claim under the ADA.  Edwards v. Horn, 10-CV- 6194 (RJS/JLC), 2012 WL 760172, at *21 (S.D.N.Y. Mar. 8, 2012).

Finally, although Phelan suggests that defendants failed to accommodate his disabilities (Third Am. Compl. at 1), this statement is conclusory.  Phelan fails to provide any factual explanation surrounding a need for a reasonable accommodation, whether he actually requested an accommodation, or which defendants were involved in this alleged denial.  Thus, Phelan fails to state any claim for a denial of a reasonable accommodation under the ADA.

Accordingly, because Phelan fails to state a claim under the ADA, it is recommended that defendants' motion for summary judgment be granted on this ground.

## F.  Eighth Amendment - Excessive Force

Phelan contends that defendants Murphy, Gebo, and Keiser violated the Eighth Amendment by using excessive force against him on December 29, 2010.[11]

A claim of cruel and unusual punishment in violation of the Eighth Amendment has both objective and subjective components.  The subjective component focuses on the defendant's motive for his or her conduct (Hudson v. McMillian, 503 U.S. 1, 7-8 (1992)), and requires a showing that the defendant "had the necessary level of culpability, shown by

---

[11]  Insofar as Phelan's complaint can be read as contending that defendants McDonald, Hayes, Warrington, or Swan – none of whom were alleged to have been involved in the December 29, 2010 assault – violated the Eighth Amendment, such claim must fail.  Threatening or verbally abusive remarks are insufficient to state a claim under the Eighth Amendment. See, e.g., Morrison v. Hartman, 898 F.Supp.2d 577, 884 (W.D.N.Y. 2012).

actions characterized by 'wantonness'" in light of the particular circumstances surrounding

the challenged conduct. <u>Blyden v. Mancusi</u>, 18 F.3d 252, 262 (2d Cir. 1999) (quoting

<u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991)); <u>see</u>, <u>e.g.</u>, <u>Sims v. Artuz</u>, 230 F.3d 14, 21 (2d

Cir.2000); <u>Davidson v. Flynn</u>, 32 F.3d 27, 30 & n.2 (2d Cir.1994).  When prison officials are

accused of using excessive force, the "wantonness" issue turns on "whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

to cause harm."  <u>Hudson</u>, 503 U.S. at 7.

The objective component focuses on the effect of the conduct, or the "harm done, in

light of 'contemporary standards of decency.'"  <u>See</u> <u>Wright v. Goord</u>, 554 F.3d 255, 268 (2d

Cir. 2009) (quoting <u>Hudson</u>, 503 U.S. at 7-8).  Under the objective component, a court will

conclude that a prison official caused harm.  Thus,

> where a prisoner's allegations and evidentiary proffers could
> reasonably, if credited, allow a rational factfinder to find that
> corrections officers used force maliciously and sadistically, our
> Court has reversed summary dismissals of Eighth Amendment
> claims of excessive force even where the plaintiff's evidence of
> injury was slight and the proof of excessive force was weak.

<u>Wright</u>, 554 F.3d at 269 (citing cases).  However, Eighth Amendment protections do not

cover <u>de</u> <u>minimis</u> uses of force because "[n]ot every push or shove, even if it may later

seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional

rights."  <u>Hudson</u>, 503 U.S. at 9 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d

Cir.1973)).

Defendants Murphy, Gebo, and Keiser first argue that Phelan's excessive force claim

against them must be dismissed because he cannot demonstrate what, if any, excessive

physical force they used against him.  Where DOCCS employees are "accused of using

excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6–7 (1992).  When determining whether the force used was wanton and unnecessary, "a court is to assess "the need for application of force, relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response." Id. at 7 (citation and quotation marks omitted).  This is because not "every malevolent touch by a prison guard gives rise to a federal cause of action.  The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9 (citations and internal quotation marks omitted).

Defendants contend that Phelan fails to raise material questions of fact regarding excessive force because Phelan was unable to state what force each specific defendant exerted upon him.  However, Phelan contends that defendants rushed into his cell, knocked him to the ground, and began assaulting him after he had already complied with a corrections officer's order to take down the noose.  As defendants entered his cell, Phelan was "wait[ing] to be cuffed with my hands at my sides for instructions." Dkt. No. 87, at 3. Although Phelan acknowledges that, because he was face down at the time of the incident, he is unable to identify which of the three defendants here exerted what force upon him, he contends that he has at least presented questions of fact because (1) it is undisputed that, other than, Fuller, Murphy, Gebo, and Keiser, there was nobody else in the cell with him at the time of the assault; (2) Phelan felt multiple hands, other than defendant Fuller's,

punching him all over his body; (3) he had abrasions on his back and hip, and (4) the pain in his ankle and thumb was so severe that he thought they were broken and x-rays were taken. Id. at 4; Dkt. No. 87-1, at 8-9. Thus, a reasonable trier of fact could infer that Defendants Murphy, Gebo, and Keiser used force on Phelan because they were in his cell during the assault and that said use of force was malicious and unnecessary because Phelan did not resist when they attempted to place him in restraints.

Accordingly, it is recommended that defendants Murphy, Gebo, and Keiser's motion for summary judgment be denied on this ground.

### G. **Qualified Immunity**

Defendants argue that, even if the cell searches are determined to be in violation of the First Amendment, they are entitled to qualified immunity because "they acted in good faith and it was objectively reasonable for them to believe that searching plaintiff's cell did not violate plaintiff's First Amendment right against retaliation." Dkt. No. 76-12, at 11-12. Defendants contend that this is so "since the law remains unsettled in the Second Circuit as to whether cell searches are actionable for purposes of a First Amendment retaliation claim." Id. at 12.

The doctrine of qualified immunity shields public officials from lawsuits for damages in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; see also Green v. Bauvi, 46 F.3d 189, 195 (2d Cir. 1995). To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her employment, a reviewing court is to determine: "(1) whether plaintiff has shown

27

facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful." Phillips v. Wright, 553 Fed. Appx. 16, 17 (2d Cir. 2014) (citing Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013)). A right is clearly established where "(1) the law was defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has recognized the right; and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Collins v. Goord, 438 F.Supp.2d 399, 420-21 (S.D.N.Y. 2006) (citation omitted).

Defendants' characterization of Phelan's First Amendment claims is too narrow. Were the only adverse actions at issue the frequency of the cell searches or the searches themselves, defendants would likely be entitled to qualified immunity because (1) it is not well-settled in Second Circuit or Supreme Court case law that cell searches can be the subject of a First Amendment retaliation claim and (2) cell searches are an integral part of prison life. See, e.g., Jones v. Harris, 665 F.Supp.2d 384, 398 (S.D.N.Y. 2009). However, as noted, Phelan also contends the destruction of his personal property, specifically his legal documents and grievances, violated his First Amendment rights. Third Am. Compl. at 6-7.

Even though there may not yet be a Second Circuit case assessing whether the retaliatory destruction of an inmate's legal property and grievances violates the First Amendment, it has been clearly established that an inmate has a constitutional right to be free from retaliation following filing of grievances and has a right to access the courts. Gill, 389 F.2d at 383-84. Because "[p]rior case law need not present fundamentally similar facts

28

and "officials can still be on notice that their conduct violates established law even in novel factual circumstances" (Collins, 438 F.Supp.2d at 421 (quoting Hope v. Pelzer, 536 U.S. 730, 740-41 (2002)),  it appears that defendants should have been aware that their destructive conduct was improper, on the general knowledge that they cannot take actions that would likely chill an inmate's exercise of First Amendment rights.  Gill, 389 F.2d at 383-84.

Accordingly, it is recommended that defendants' motion for summary judgment be denied insofar as they raise the qualified immunity defense.


### III.  Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion for summary judgment (Dkt. No. 76-12) be:

1. **GRANTED** as to (a) Plaintiff's First Amendment claim against defendants Swan, Hayes, and Gebo; (b) Plaintiff's claims under the ADA; and (c) Defendants' exhaustion defense as it relates to the March 9, 2011 and March 13, 2011 cell searches; and

2. **DENIED** as to (a) Plaintiff's Eighth Amendment excessive force claim against Defendants Murphy, Gebo, and Keiser; (b) Defendants' exhaustion defense relating to the December 29, 2010 assault and January 21, 2011 cell search; and (c) Defendants' qualified immunity defense as it relates to the January 21, 2011 cell search.

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**SO ORDERED.**

_Christian F. Hummel_

Christian F. Hummel
U.S. Magistrate Judge

Dated: November 13, 2014
      Albany, New York