UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH J. PHELAN,

                           Plaintiff,

                                      No. 9:11-CV-314
        -v-                              (DNH/CFH)

SWAN, Correctional Officer, Great Meadow
Correctional Facility; MCDONALD, Correctional
Officer, Great Meadow Correctional Facility;
WARRINGTON, Correctional Officer, Great Meadow
Correctional Facility; OWENS, Sergeant, Great
Meadow Correctional Facility; GEBO, Correctional
Officer, Great Meadow Correctional Facility;
FULLER, Correctional Officer, Great Meadow
Correctional Facility; KEISER, Correctional Officer,
Great Meadow Correctional Facility; MURPHY,
Correctional Officer, Great Meadow Correctional
Facility; and HAYES, Correctional Officer, Great
Meadow Correctional Facility,

                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

KENNETH J. PHELAN
Plaintiff Pro Se
09-A-1183
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

HON. ERIC T. SCHNEIDERMAN            ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York     Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

# DECISION and ORDER

## I. INTRODUCTION

Pro se plaintiff Kenneth J. Phelan brought this civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12101, the Americans with Disabilities Act ("ADA"). On November 13, 2014, the Honorable Christian F. Hummel, United States Magistrate Judge, advised by Report-Recommendation that defendants' motion for summary judgment be granted in part and denied in part. He recommended the motion be granted as to plaintiff's First Amendment claim against defendants Swan, Hayes, and Gebo; plaintiff's claims under the ADA; and defendants' exhaustion defense as it relates to the March 9, 2011 and March 13, 2011 cell searches, and that those claims be dismissed. He recommended the motion be denied as to plaintiff's Eighth Amendment excessive force claim against defendants Murphy, Gebo, and Keiser; defendants' exhaustion defense relating to the December 29, 2010 assault and January 21, 2011 cell search; and defendants' qualified immunity defense as it relates to the January 21, 2011 cell search. Plaintiff and defendants timely filed objections to the Report-Recommendation.

## II. BACKGROUND[1]

Plaintiff alleges that on December 29, 2010, he was assaulted by defendants Owen, Keiser, Murphy, Fuller, and Gebo in violation of the Eighth Amendment. He did not file a grievance regarding this incident. He now contends administrative remedies were unavailable to him because he feared that if he filed a grievance, these defendants would

---

[1] Only those facts directly pertinent to the objections will be recounted here. For a full statement of plaintiff's allegations, reference is made to the Report-Recommendation.

cause him further physical harm. He suggests that he feared retaliatory physical assaults because of these defendants' conduct in the December 29, 2010 assault.

Phelan further contends that his cell was searched and trashed by corrections officers on January 21, 2011 (McDonald and Warrington); March 9, 2011 (McDonald and Swan); March 11, 2011[2]; and March 13, 2011 (Hayes and Gebo). Specifically, he alleges that defendants McDonald, Warrington, Swan, Hayes, and Gebo violated his rights under the First Amendment by implementing these discriminatory, harassing, and destructive cell searches in retaliation for his filing lawsuits, grievances, and/or making complaints about them and other corrections officers.

Plaintiff did not file a grievance regarding the January 21, 2011 cell search. He suggests that his failure to grieve the January 21, 2011 cell search was due to his fear that McDonald and Warrington would retaliate against him. Phelan contends that McDonald and Warrington were calling him names and threatening him before the January 21, 2011 cell search occurred. Specifically, on January 18, 2011, shortly after he complained to a sergeant about McDonald and Warrington making threats of physical violence against him and calling him names, McDonald or Warrington said to "drop the grievances or else." The alleged retaliatory cell search followed on January 21, 2011.

Phelan filed one grievance collectively contending that he was subjected to retaliatory cell searches on March 9, 11, and 13, 2011. However, he did not appeal the grievance to the Central Office Review Committee following an unfavorable determination.

---

[2] Phelan does not provide factual information about the cell search on March 11, 2011, including the defendants he alleges to have been involved. Defendants contend plaintiff's cell was not searched on March 11, 2011, and produced a computer generated list which identifies cells which were to be randomly searched. Report-Recommendation at 6. This list states Phelan's cell was searched on March 9 and 13, 2011.

-3-

## III. **DISCUSSION**

After reviewing a magistrate judge's recommendations, the district court may accept, reject or modify those recommendations. See 28 U.S.C. § 636(b)(1). The court reviews de novo those portions of the magistrate judge's recommendations to which a party objects. See Pizzaro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). "If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error." Layou v. Crews, No. 9:11–CV–0114, 2013 WL 5494062, at *1 (N.D.N.Y. Sept. 30, 2013) (Kahn, J.) (citing Chylinski v. Bank of Am., N.A., 434 F. App'x 47, 48 (2d Cir. 2011) (summary order)). Finally, even if the parties file no objections, the court must ensure that the face of the record contains no clear error. See Wilds v. United Parcel Serv., Inc., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

In his Report-Recommendation and Order, Magistrate Judge Hummel recommended, among other things, that defendants' motion for summary judgment be denied as to plaintiff's failure to grieve and exhaust the December 29, 2010 assault. It is unclear whether Magistrate Judge Hummel recommended denial of the motion due to disputed issues of fact rendering summary judgment inappropriate in light of those facts—and thus concluding that defendants may still pursue the non-exhaustion defense but leaving the decision for a fact finder; or denied the motion as a matter of law, estopped defendants from pursuing the defense, and excused Phelan from exhausting. In support of the former, Magistrate Judge Hummel explained that Phelan presents questions of fact as to whether defendants Owens, Keiser, Murphy, Fuller, and Gebo rendered the administrative remedies unavailable to him as it relates to the December 29, 2010 assault. Report-Recommendation at 11. However, in

support of the latter, Magistrate Judge Hummel noted that "a similarly-situated person of reasonable firmness would avoid grieving the December 29, 2010 assault out of fear" and "recommended that defendants Owens, Keiser, Murphy, Fuller, and Gebo be estopped from arguing exhaustion of administrative remedies as it relates to the December 29 assault." Id. at 11–12. Magistrate Judge Hummel's recommendation to deny the motion on either basis will be rejected and defendants' motion as to plaintiff's failure to exhaust the December 29, 2010 assault will be granted for the following reasons.

It is unnecessary to repeat here the well-settled precedent requiring exhaustion of a prisoner's administrative remedies pursuant to the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996).[3] In considering whether a plaintiff may be excused from exhausting, a court must examine whether:

> (1) administrative remedies are not available to the prisoner;
> (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)). Determining whether an inmate asserts a valid excuse for non-exhaustion is a task for the court. Messa v. Goord, 652 F.3d 305, 309 (2d Cir. 2011). Disputed facts do not convert exhaustion into a jury issue. Id. Instead, if disputed facts exist, a hearing on the issue of exhaustion is appropriate. Id.; see also Nelson v. Plumley, No. 9:12–CV–422, 2014 WL 4659327, at *1 (Sept. 17, 2014) (McAvoy, S.J.) (adopting Report-

---

[3] For a full recitation of the PLRA exhaustion requirements and grievance administration at New York State correctional facilities, reference is made to the Report-Recommendation.

Recommendation of Peebles, J.) ("An evidentiary hearing is necessary to determine whether Plaintiff exhausted his administrative remedies with respect to his remaining excessive-force claim against Defendants . . . .")

Here, it is undisputed plaintiff did not file a grievance regarding the December 29, 2010 assault. Rather, he maintains he was unable to do so because he was under fear from the assault.

Phelan has not sufficiently alleged that he is excused from exhausting the December 29, 2010 due to any of the three exemptions set forth in Hemphill, 380 F.3d at 686. First, on the presented facts, administrative remedies were "available" to Phelan; that is, the prison provided grievance procedures that inmates claiming excessive force could utilize. As explained in the Report-Recommendation, it is undisputed that at all relevant times, the New York Department of Corrections and Community Supervision ("DOCCS") had in place a three-step inmate grievance program. Report-Recommendation at 10; N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.5 (2014). Phelan has presented no facts suggesting that administrative remedies were originally unavailable to him.

However, the Second Circuit has instructed that the availability inquiry does not end there, Hemphill, 380 F.3d at 687, because Phelan claims that he was fearful such that remedies that may have been normally available were not. As the Hemphill Court instructed, "this argument can be made in two ways: First, that the threats rendered all administrative remedies unavailable; and second, that because of the threats some procedures that would ordinarily be available were effectively unavailable." Id. As in Hemphill, it does not appear plaintiff is making the first argument, as he argues that he filed a formal complaint with the

Inspector General's Office at DOCCS headquarters in Albany, New York.[4]  He does however in his opposition to defendants' motion, clearly make the second contention—that his letter to the Inspector General, at the time he made it, constituted the only administrative remedy that, in view of the assault he suffered and the fear he was under, was functionally available to him.  See id.

"The test for deciding whether the ordinary grievance procedures were available must be an objective one:  that is, would 'a similarly situated individual of ordinary firmness' have deemed them available."  Id. at 688 (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).  "[T]hreats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts."  Id. (internal quotation marks omitted).

It cannot be said that the remedies which Phelan failed to pursue were unavailable to him.  Phelan has asserted nothing but an "allegation of a generalized fear of retaliation" following the December 29, 2010 incident, which is insufficient to excuse a failure to file a grievance.  Brown v. Napoli, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) (rejecting exhaustion excuse and finding plaintiff failed to allege any facts to support his claimed fear of retaliation) (collecting cases).  If such a bare allegation of fear based on the underlying incident without more renders administrative remedies unavailable, a plaintiff would never be required to grieve the use of excessive force because he or she could always claim they were under fear from the use of excessive force.  Moreover, the one specific threat that Phelan alleges in this

---

[4] Magistrate Judge Hummel correctly found that plaintiff's letter to the Inspector General does not fulfill the exhaustion requirement.  See Report-Recommendation at 11–12.

-7-

case—that on January 18, 2011, defendant McDonald or Warrington told him to "drop the grievances, or else"—was made shortly after he complained to a sergeant about the two corrections officers making threats of physical violence and calling him names.[5] Phelan fails to allege any specific threats related to the grievance procedures that would have led any such similarly situated individual to believe that these procedures were unavailable following the December 29, 2010 assault. See e.g., Snyder v. Whittier, 428 F. App'x 89, 91 (2d Cir. July 1, 2011) (summary order) (concluding that plaintiff who testified he was "fearful of filing a grievance" about assault at issue failed "to allege any specific threats related to the grievance procedures that would have led any such similarly situated individual to believe that these procedures were unavailable.")

Similarly, Phelan cannot establish that defendants are estopped from raising the defense of non-exhaustion for essentially the same reasons. Under the doctrine of estoppel, "prison officials' threats or other inhibiting conduct may estop defendants from asserting the affirmative defense of non-exhaustion." Hemphill, 380 F.3d at 688; Ziemba v. Wezner, 366 F.3d 161, 162–64 (2d Cir. 2004) (directing the district court to consider whether the defendants were estopped from raising the exhaustion defense where the plaintiff alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison in order to prevent him from seeking administrative remedies); see also Ruggiero, 467 F.3d at 175 (A court must consider whether "defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense."). An inmate may invoke estoppel in the PLRA context where the "defendants took affirmative action to prevent

---

[5] Phelan argues that this threat rendered administrative remedies unavailable for the January 21, 2011 cell search. Magistrate Judge Hummel correctly concluded that this specific affirmative threat of retaliation was enough to deter Phelan from filing a grievance as to the January 21, 2011 cell search.

-8-

him from availing himself of grievance procedures." Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011) (internal quotation marks omitted). "Prior cases have held that verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action." Id. Plaintiff has alleged nothing of the sort here. Again, he has not alleged that the specific January 18, 2011, threat by defendant McDonald or Warrington to "drop the grievances, or else" in any way prohibited him from filing a grievance relating to the December 29, 2010 assault.

Finally, "there are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." Giano v. Goord, 380 F.3d 670, 676 (2d Cir. 2004). Special circumstances include a plaintiff's reasonable misunderstanding of the grievance procedures. Id. Phelan does not argue that he misunderstood the grievance procedures or that he reasonably, but mistakenly, interpreted DOCCS regulations. There are thus no special circumstances to justify plaintiff's non-exhaustion of the December 29, 2010 assault.

The undisputed facts make clear that there is no basis on which it could be found that defendants inhibited Phelan's access to administrative remedies, or that administrative remedies were otherwise unavailable to Phelan as it relates to the December 29, 2010 assault. Where, as here, a prisoner fails to properly exhaust his administrative remedies before filing suit, the claim must be dismissed.

Having reviewed the remainder of Magistrate Judge Hummel's Report-Recommendation, he properly recommended dismissal of plaintiff's First Amendment claim

against defendants Swan, Hayes, and Gebo; plaintiff's claims under the ADA; and defendants' exhaustion defense as it relates to the March 9, 2011 and March 13, 2011 cell searches.[6] He also properly recommended defendants' motion for summary judgment be denied as to defendants' exhaustion defense relating to the January 21, 2011 cell search, and defendants' qualified immunity defense as it relates to the January 21, 2011 cell search. In light of modifying the Report-Recommendation and granting summary judgment on defendants' exhaustion defense as to the December 29, 2010 assault, plaintiff's Eighth Amendment excessive force claim against defendants Owens, Keiser, Murphy, Fuller, and Gebo will be dismissed for failure to exhaust and there is no need to consider defendants' argument on this basis.[7]

## IV. CONCLUSION

Accordingly, the Report-Recommendation and Order will be adopted in part and rejected in part.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2. Defendants' motion is GRANTED as to: (a) plaintiff's First Amendment claim against defendants Swan, Hayes, and Gebo; (b) plaintiff's claims under the ADA;

---

[6] Defendants did not move for summary judgment on plaintiff's failure to exhaust the alleged March 11, 2011 cell search as defendants maintain there was no search on that date.

[7] Only defendants Murphy, Gebo, and Keiser moved for summary judgment on plaintiff's excessive force claim on the basis that plaintiff cannot establish what, if any, excessive force was used by these defendants. However, the claim will be dismissed as against all defendants for failure to exhaust.

(c) defendants' exhaustion defense as it relates to the December 29, 2010 assault and March 9, 2011 and March 13, 2011 cell searches[8]; (d) plaintiff's Eighth Amendment excessive force claim against defendants Owen, Keiser, Murphy, Fuller, and Gebo, and these claims dismissed;

    3. Defendants' motion is DENIED as to: (a) defendants McDonald and Warrington's exhaustion defense relating to the January 21, 2011 cell search; and (b) defendants McDonald and Warrington's qualified immunity defense as it relates to the January 21, 2011 cell search;

    4. The Third Amended Complaint is DISMISSED against defendants Gebo, Swan, Owens, Fuller, Keiser, Murphy, and Hayes;

    5. The only claim surviving is the January 21, 2011 cell search against defendants McDonald and Warrington;

    6. This matter is referred back to Magistrate Judge Hummel for the assignment of trial counsel within thirty (30 days); and

    7. Upon the assignment of trial counsel, the matter shall be forwarded to the undersigned for a trial date to be set; and

    8. The Clerk is directed to serve a copy of this Decision and Order upon plaintiff in accordance with the Local Rules.

    IT IS SO ORDERED.

---

[8] To the extent Phelan could establish his cell was searched on March 11, 2011 that claim will also be dismissed for the same reason that the March 9 and 13, 2011 searches cannot proceed.

_____
United States District Judge

Dated: February 26, 2015
      Utica, New York.